**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **RABBI AVRAHAM BEKHOR, SHARI BEKHOR, and THE CHABAD OF RANDOLPH, INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**CHURCH MUTUAL INSURANCE COMPANY, S.I., MICHAEL HARD,**<br><br>**Defendants.** | **Civil Action No.: 2:23-02885 (ES) (LDW)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

Before the Court are cross-motions for summary judgment. Defendant Church Mutual Insurance Company, S.I. ("Church Mutual") moves for summary judgment on Plaintiffs' claims against it. (D.E. No. 44 ("Church Mutual Motion")). Plaintiffs cross-move for summary judgment on their breach of contract and bad faith claims. (D.E. No. 43 ("Cross-Motion")). Having carefully considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, Church Mutual's Motion is **GRANTED** and Plaintiffs' Cross-Motion is **DENIED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Prior to May 17, 2021, Plaintiff Rabbi Avraham Bekhor, acting on behalf of Plaintiff Chabad of Randolph, Inc. ("Chabad"), contacted Church Mutual to obtain a commercial automobile insurance policy. (D.E. No. 44-1 ¶¶ 9, 13; D.E. No. 51-1 ¶¶ 9, 13). During those interactions, Plaintiff Rabbi Bekhor requested liability and uninsured motorist coverage and specifically asked a Church Mutual representative if he would have uninsured motorist coverage

"as a person," to which the representative responded "yes." (D.E. No. 44–1 ¶ 18; D.E. No. 51-1 ¶ 18). Church Mutual subsequently issued Business Automobile Policy No. 0342907 09-221376 (the "Policy") to "Chabad of Randolph" as the Named Insured, with an effective period of April 2, 2021, to April 2, 2022. (D.E. No. 44-1 ¶ 1; D.E. No. 51-1 ¶ 1). The Policy was issued on a direct-writing basis without the use of an insurance broker or agent. (D.E. No. 44–1 ¶ 26; D.E. No. 51-1 ¶ 26). Plaintiffs Rabbi Bekhor and Shari Bekhor are not listed under the "Named Insured" on the Policy's Declarations. (D.E. No. 44-1 ¶ 2; D.E. No. 51-1 ¶ 2).

The Policy contains a "New Jersey Uninsured and Underinsured Motorist Coverage" endorsement (the "UM Endorsement"). (D.E. No. 44-1 ¶ 5; D.E. No. 51-1 ¶ 5). The UM Endorsement provides that Church Mutual "will pay all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle.'" (D.E. No. 44-1 ¶ 6; D.E. No. 51-1 ¶ 6). Where the Named Insured is designated as a "partnership, limited liability company, corporation, or any other form of organization," the UM Endorsement defines the "insureds" to include, in relevant part: "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" (D.E. No. 44-1 ¶ 7; D.E. No. 51-1 ¶ 7). The UM Endorsement uses standard form language generated by the Insurance Services Organization ("ISO"), (D.E. No. 44-1 ¶¶ 5, 8; D.E. No. 51-1 ¶¶ 5, 8), and was subsequently submitted to and approved by the New Jersey Commissioner of Insurance. (D.E. No. 44-1 ¶ 8; D.E. No. 44-11 ¶¶ 3–4; D.E. No. 51-1 ¶ 8)).[1]

[1] In responding to Church Mutual's Statement of Material Fact number eight, in which Church Mutual states that the New Jersey Commissioner of Insurance approved the form in question, Plaintiffs contend that the certification underlying Church Mutual's statement "is arguably not sufficient to establish that the commissioner approved the clauses at issue in this case[.]" (D.E. No. 51-1 ¶ 8). As Plaintiffs have not identified any contradictory evidence, however, that deposition testimony is the only evidence of note in the motion record. There is, therefore, no genuine dispute of fact on this point.

On the evening of May 17, 2021, the Jewish holiday of Shavuot, Plaintiff Rabbi Bekhor was walking as a pedestrian on the westbound shoulder of the Sussex Turnpike in Randolph, New Jersey,[2] when an unidentified motor vehicle struck him from behind. (D.E. No. 43-2 ¶¶ 1, 2, 7; D.E. No. 52 ¶¶ 1, 2, 7). The force of the impact caused Plaintiff Rabbi Bekhor to be thrown into the air and forcefully strike the ground. (D.E. No. 43-2 ¶ 8). The vehicle fled the scene of the accident, committing a hit and run. (D.E. No. 43-2 ¶ 7; D.E. No. 52 ¶ 7). It is undisputed that Plaintiff Rabbi Bekhor was not occupying a vehicle at the time of the collision. (D.E. No. 44-1 ¶ 28; D.E. No. 51-1 ¶ 28).

Following the hit-and-run accident, Plaintiffs filed a timely claim with Church Mutual for uninsured motorist benefits. (D.E. No. 43-2 ¶ 16; D.E. No. 52 ¶ 16; D.E. No. 44-1 ¶ 31; D.E. No. 51-1 ¶ 31). By letter dated June 20, 2022, Church Mutual communicated its disclaimer of coverage, determining that the Policy did not provide uninsured motorist coverage for Rabbi Bekhor's claims. (D.E. No. 44-1 ¶ 32; D.E. No. 51-1 ¶ 32).

Plaintiffs commenced this action by filing a Complaint in the Superior Court of New Jersey, Morris County, on March 17, 2023. (D.E. No. 1 at 8–14[3] (ECF Pagination) ("Compl. or Complaint")). Plaintiffs assert claims for breach of contract, breach of the implied covenant of good faith and fair dealing, breach of fiduciary duty, violations of the New Jersey Insurance Fair Conduct Act ("IFCA") and the New Jersey Unfair Claims Settlement Practices Act ("UCSPA"), and negligence. (Compl. at 2–7). On May 26, 2023, Church Mutual removed the action to this

---

[2] Plaintiff Rabbi Bekhor was walking rather than driving in observance of religious traditions that prohibit driving on the holiday. (D.E. No. 43–2 ¶ 6; D.E. No. 52 ¶ 6).

[3] Docket Entry No. 1 is Church Mutual's Notice of Removal. Church Mutual included the pre-removal record, including the Summons, Complaint, and other documents, as "Exhibit A" to its Notice of Removal. (*See generally* D.E. No. 1). Church Mutual filed its Notice of Removal and Exhibit A as a single docket entry, however. Moreover, the Complaint itself does not feature any page numbers. Therefore, when referring to the Complaint, the Court refers to the document included at pages 8-14 (using the pagination generated by the Court's CM/ECF system). Where the Court refers to a specific page from the Complaint (e.g., "Compl. at 2"), it is referring to the second page of that document (i.e., page 9 of Docket Entry No. 1).

Court pursuant to 28 U.S.C. § 1332. (*See generally* D.E. No. 1.). The parties have completed discovery and Church Mutual now moves for summary judgment on all counts. (*See generally* D.E. No. 44-15 ("Church Mutual Motion Mov. Br.")). Plaintiffs oppose that motion and have filed a cross-motion for partial summary judgment regarding their breach of contract (i.e., entitlement to insurance coverage) and bad faith claims. (*See generally* D.E. No. 43-3 ("Cross-Motion Mov. Br.")). The cross motions are fully briefed. (D.E. No. 51 ("Church Mutual Motion Opp. Br."); D.E. No. 54-3 ("Church Mutual Motion Reply Br."); D.E. No. 52-14 ("Cross-Motion Opp. Br."); D.E. No. 53 ("Cross-Motion Reply Br.").[4]

## II. LEGAL STANDARD

Summary judgment is appropriate if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if it is supported by evidence such that a reasonable jury could find the fact in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law[.]" *Id.*

If the party seeking summary judgment makes this showing, the non-moving party must then "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Furthermore,

[4] In addition to their briefing, the parties filed various other supporting documents, including statements of material fact and declarations. While the Court has considered the full motion record, it does not inventory those filings here for the sake of brevity.

"[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Finally, in deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## III. DISCUSSION

Plaintiffs' Complaint asserts claims for breach of contract, bad faith, statutory violations of the IFCA and UCSPA, negligence in the procurement of insurance, and loss of consortium. To resolve the parties' cross-motions seeking summary judgment, the Court will analyze these claims in turn. The Court begins by analyzing whether the Policy's UM Endorsement provides coverage to Plaintiff Rabbi Bekhor and, relatedly, whether Church Mutual violated New Jersey statutory law or public policy by failing to provide such coverage.

### a. Breach of Contract

Plaintiffs allege that Church Mutual breached the terms of the Policy by wrongfully denying Rabbi Bekhor's claim for uninsured motorist ("UM") benefits. (Compl. at 2–3). To resolve this claim, the Court must interpret the Policy's UM Endorsement and determine whether any limitations therein conflict with New Jersey's compulsory insurance statutes, specifically N.J. Stat. Ann. § 17:28-1.1(f), or the State's public policy. For the reasons set forth below, the Court finds that the Policy's language is unambiguous, does not violate New Jersey statutory law or

public policy, and expressly precludes coverage for Rabbi Bekhor under the undisputed facts of this case.

### i. The Plain Language of the Policy

Under New Jersey law, when interpreting an insurance policy, courts must give the policy's words their plain and ordinary meaning. *President v. Jenkins*, 853 A.2d 247, 254 (N.J. 2004). If the language is clear, the Court must apply the policy as written. *Id*. If the language is ambiguous, the Court must construe the policy in favor of the insured. *Doto v. Russo*, 659 A.2d 1371, 1376 (N.J. 1995).

Here, the parties agree that the UM Endorsement provides coverage to those who qualify as an "insured." (D.E. No. 44-1 ¶ 6; D.E. No. 51-1 ¶ 6). The UM Endorsement explicitly defines who qualifies as an "insured" based on the legal status of the "Named Insured" designated in the Policy's declarations. (D.E. No. 44-1 ¶ 7; D.E. No. 51-1 ¶ 7). The parties further agree that Chabad of Randolph is the sole "Named Insured" under the Policy. (D.E. No. 44-1 ¶ 1; D.E. No. 51-1 ¶ 1). Where, as here, the Named Insured is designated as a "partnership, limited liability company, corporation, or any other form of organization," the UM Endorsement restricts the definition of an "insured", in relevant part, to: "[a]nyone 'occupying' a covered 'auto' or a temporary substitute for a covered 'auto'" (D.E. No. 44-1 ¶ 7).

Applying the plain language of the UM Endorsement to the undisputed facts of this case, the Court finds that Plaintiff's breach of contract claim fails. Rabbi Bekhor was struck by a hit-and-run driver while walking as a pedestrian on the shoulder of the Sussex Turnpike. (D.E. No. 43-2 ¶¶ 1, 7). Because he was not "occupying" a covered "auto"—or any automobile—at the time of the accident, (D.E. No. 44-1 ¶ 28), Rabbi Bekhor is not entitled to recovery as an "insured" under the UM Endorsement.

**ii. N.J. Stat. Ann. § 17:28-1.1(f)**

Plaintiffs further argue that the UM Endorsement's vehicle occupancy restriction violates N.J. Stat. Ann. § 17:28-1.1(f), which they contend requires "insured" status for all of the Chabad's employees, including pedestrians, for the purpose of UM coverage. (Cross-Motion Mov. Br. at 6–8; Church Mutual Motion Opp. Br. at 8 (adopting the arguments from Plaintiffs' cross-motion moving brief)). That argument, however, relies on a misapplication of the statute's legislative history and purpose. N.J. Stat. Ann. § 17:28-1.1(f) states: "[a] policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity, regardless of whether the individual is an additional named insured under that policy. . . ."

To understand the impact of the statute, the Court must look to the legislative intent that led to its enactment. In 2005, the New Jersey Supreme Court upheld the validity of "step-down" provisions in commercial automobile policies. *Pinto v. N.J. Mfrs. Ins. Co.*, 874 A.2d 520 (N.J. 2005). Those provisions allowed insurers to cap the amount of UM coverage available to an injured employee at the lower limits of that employee's own personal automobile policy, rather than the higher limits of the employer's commercial policy, even if the employee was injured in a covered vehicle in a work-related accident. *Id*. at 526-27; *James v. New Jersey Mfrs. Ins. Co.*, 83 A.3d 70, 76 (NJ 2014) (citation omitted).

The New Jersey State Legislature enacted N.J.S.A. 17:28-1.1(f) in 2007 in an effort to abrogate the *Pinto* decision. *Chiaccheri v. Zurich Am. Ins. Co.*, No. 23-cv-07056, 2024 WL 3518118, at *5 (D.N.J. July 24, 2024), *aff'd*, No. 24-2563, 2026 WL 2412517, at *5 n.6 (3d Cir. Aug. 18, 2026) ("The legislative statement accompanying N.J. Stat. Ann. § 17:28-1.1(f) explains

that the amendment was enacted in response to the New Jersey Supreme Court's decision in *Pinto*, which found . . . step-down provisions enforceable: . . . 'This bill reverses the effect of the *Pinto* decision by prohibiting step-down provisions in these policies.'" (quoting Statement accompanying P.L. 2007, c. 163, approved September 10, 2007, Senate, No. 1666 at https://pub.njleg.state.nj.us/Bills/2006/AL07/163_.PDF.)). As the New Jersey Supreme Court later confirmed in *James*, the legislature's intent in enacting the statute was targeted at "'prohibit[ing] the use of step-down provisions in motor vehicle liability policies issued to corporate or business entities.'" 83 A.3d at 76 (citation omitted). The statute thus ensures that, if an employee qualifies for coverage under the commercial policy, the insurer cannot reduce the amount of that coverage via a step-down provision based on that employee's personal insurance policy.

The statute does not, however, rewrite the parties' agreed-upon definitions of who qualifies as an insured. On this point, the Court finds the Appellate Division's unpublished decision in *Singh v. Chestnut*, No. A-5482-18T4, 2020 N.J. Super. Unpub. LEXIS 2000 (N.J. App. Div. Oct. 20, 2020), to be highly persuasive. In *Singh*, the plaintiff was working as a gas station attendant when he was injured in a workplace accident. *Id.* at *1. Singh's employer was covered under a commercial automobile insurance policy that included a UM and UIM endorsement that appears, in all relevant respects, to be identical to the UM Endorsement at issue here. *Id.* at *4–5. The Appellate Division found that Singh was not an "insured" under the policy, as he was neither a "named insured," nor was he occupying a covered vehicle at the time of his accident. *Id.* at *5–6. The Appellate Division then explicitly rejected the argument that N.J. Stat. Ann. § 17:28-1.1(f) operated to give Singh the same status as a "named insured" under the policy, *id.* at * 6–9, reasoning that that the statute "was intended to address the amount of UM or UIM coverage

available to a business entity's employees who are entitled to coverage under the entity'ss commercial liability policy. The statute does not apply where, as in this case, the employee was not entitled to such coverage under the policy[,]" *id.* at *8; *see also id.* at *11 ("The statute was not . . . intended to confer insured status upon employees who are not entitled to UM or UIM coverage under the policy."). The same rationale applies here, and this Court adopts the Appellate Divison's reasoning in *Singh* to reject Plaintiff's statutory argument.

**iii. Public Policy**

The Court finds that Plaintiff's remaining arguments regarding the import of New Jersey's public policy and their own reasonable expectations are equally unconvincing. (Cross-Motion Mov. Br. at 6-8). Plaintiff relies on *Fernandez v. Selected Risks Ins. Co.*, 412 A.2d 755 (N.J. 1980) and *Berger v. First Trenton Indem. Co.*, 772 A.2d 28 (N.J. App. Div. 2001), arguing that UM coverage must protect an insured whether they are walking, standing, or occupying a vehicle, and that public policy forbids insurers from eliminating pedestrian hit-and-run UM coverage. (Cross-Motion Mov. Br. at 7-8; Church Mutual Motion Opp. Br. at 11-13).

Those cases, however, are distinguishable. In *Berger*, the court struck down a "for fee" exclusion that attempted to eliminate UM coverage for a passenger in a taxi cab. *Berger*, 772 A.2d at 33-34. In *Fernandez*, the court struck down an exclusion that restricted UM coverage to the insured's vehicle, holding that personal coverage follows the person, not the vehicle. *Fernandez*, 412 A.2d at 757-58. Both cases involved *personal* automobile policies where the injured plaintiff already qualified as an insured under the relevant policy language. As Church Mutual correctly observes, commercial automobile policies are different since corporate entities cannot be pedestrians or have resident family members like the Policy outlines. (Church Mutual Motion Reply Br. at 8). Therefore, it is not uncommon for commercial UM endorsements to legally limit

coverage to individuals occupying the covered vehicles. (*See Id.* at 9 ("[A] business automobile policy issued to the corporation does not . . . afford UM/UIM coverage if an employee is injured by an uninsured/underinsured vehicle while the employee is a pedestrian, and the injury occurs outside the scope of the employee's employment." (quoting Jordan R. Plitt et al., *Couch on Insurance* 3d § 123:11 (2024))). Extending coverage to all employees of the Chabad, regardless of their occupancy of a covered vehicle, would expand the Policy's coverage far beyond that to which the parties agreed and that which New Jersey law requires. Moreover, the record reflects that the UM Endorsement at issue used form language generated by ISO and approved by the New Jersey Commissioner of Insurance. (D.E. No. 44-1 ¶¶ 5 & 8). The fact that the relevant state authority has approved the UM Endorsement undercuts Plaintiff's argument that the language offends New Jersey's public policy. *See Hartford Ins. Co. v. Allstate Ins. Co.*, 317 A.2d 760, 763 (N.J. App. Div. 1974) (finding that, where the Commissioner has approved policy language, it "must be presumed . . . that he did not consider [it] . . . unfair or inequitable, or that it was against public policy."), *aff'd*, 347 A.2d 353 (1975), *overruled on other grounds by Motor Club of Am. Ins. Co. v. Phillips*, 330 A.2d 360 (N.J. 1974).

Finally, Plaintiffs' argument that the Policy is vague and should be interpreted against Church Mutual to provide coverage for Plaintiff Rabbi Bekhor's injuries is without merit. (Cross-Motion Mov. Br. at 8-11). The UM Endorsement at issue here is not vague. It explicitly states its definitions and terms of coverage, providing different criteria depending on whether the "Named Insured" is an individual or an organization. (D.E. No. 44-1 ¶ 7). The Court must enforce it as written. *President*, 853 A.2d at 254. Accordingly, the Court finds that Church Mutual did not breach the Policy by denying the claim. Church Mutual is therefore entitled to summary judgment on Count One, and Plaintiffs' cross-motion for partial summary judgment on this count is denied.

**b. Breach of the Covenant of Good Faith and Fair Dealing**

Every insurance contract in New Jersey contains an implied covenant of good faith and fair dealing, which imposes a duty on insurers to act in good faith when processing first-party claims. *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 26 (N.J. 2015); *Wood v. N.J. Mfrs. Ins. Co.*, 21 A.3d 1131, 1140 (N.J. 2011) (quoting *Price v. N.J. Mfrs. Ins. Co.*, 867 A.2d 1181, 1185 (N.J. 2005)). To assess whether an insurer has breached this duty when denying or delaying benefits, courts employ the "fairly debatable" standard. *Pickett v. Lloyd's (A Syndicate of Underwriting Members)*, 621 A.2d 445, 453 (1993). Under that standard, an insured must show that an insurer had "no debatable reasons" for denying benefits. *Id.* at 457-58. A plaintiff asserting a common law claim for first-party bad faith denial of benefits must therefore prove (i) the absence of a reasonable basis for denying benefits under the policy, and (ii) the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *Id.* at 453-54 (internal quotations and citation omitted). It therefore follows that "a claimant who could not have established as a matter of law a right to summary judgment on the substantive claim would not be entitled to assert a claim for an insurer's bad faith refusal to pay the claim." *Id.* at 454. Accordingly, if there is a valid question of coverage or a triable issue of fact regarding the claim, the insurer bears no liability for bad faith. *Id.* at 453-54.

As explained in Section III(a) above, the Court has determined that the UM Endorsement does not extend "insured" status to Plaintiff Rabbi Bekhor for the underlying accident, and that the UM Endorsement violates neither N.J. Stat. Ann. § 17:28-1.1(f) nor New Jersey public policy. As the Court has resolved the underlying coverage question in Church Mutual's favor, Plaintiffs' bad faith claim necessarily fails. Indeed, Plaintiffs' bad faith argument rests entirely on the premise that they have established a right to coverage, from which they reason that bad faith naturally

follows. (Cross-Motion Mov. Br. at 1611-12). Plaintiffs offer no separate reasons why Church Mutual's denial lacked a debatable basis. Their bad faith claim therefore fails along with their underlying coverage claim.

**c. Claims for Violation of the IFCA and UCSPA**

The Court finds that the same reasoning is fatal to Plaintiffs' claims under the IFCA and the UCSPA. The IFCA permits a claimant seeking uninsured motorist benefits to bring a civil action against the insurer for an unreasonable denial of a claim for payment of benefits, an unreasonable delay in processing such a claim, or a violation of the UCSPA. N.J. Stat. A. § 17:29BB-3(a). The statute does not define what makes a denial or a delay unreasonable, and the parties have identified no decision addressing whether the *Pickett* "fairly debatable" standard governs such a claim. (Church Mutual Motion Mov. Br. at 17; Church Mutual Motion Opp. Br. at 16). The Court need not resolve that question here, however, because the Court has already found that Church Mutual correctly denied Plaintiffs' claim on the basis that Plaintiff Rabbi Bekhor did not qualify as an "insured" under the UM Endorsement. A denial that correctly applies the terms of a policy is not an unreasonable denial.

Plaintiffs also seek relief under the UCSPA, citing N.J. Stat. Ann. § 17:29B-4. (Compl. at 4). While Plaintiffs' do not specify which portion of that statute Church Mutual allegedly violated, (*id.*), it appears that Plaintiff's claim is premised on subsection 9, which addresses a variety of "[u]nfair claim settlement practices." N.J. Stat. Ann. § 17:29B-4(9). As the Court has already found that Church Mutual properly denied coverage for Plaintiff Rabbi Bekhor's accident, and Plaintiffs have not identified any other basis for liability under the UCSPA, this claim fails.

Church Mutual is therefore entitled to summary judgment on Plaintiffs' claims under the IFCA and the UCSPA.

**d. Negligence/Breach of Fiduciary Duty**

In their Fourth Count, Plaintiffs allege that Church Mutual and its agents acted as Plaintiffs' insurance brokers and failed to exercise due care and diligence in that role, either by neglecting to procure the insurance they promised or by procuring a policy that was materially deficient, void, or did not provide the coverage they undertook and promised to supply. (Compl. at 5-6). In other words, Plaintiffs contend that Church Mutual should have either (i) advised Plaintiff Rabbi Bekhor to obtain uninsured motorist coverage that would have applied to him even when he was not occupying a covered automobile, or (ii) procured such coverage on his behalf. That claim fails because Church Mutual owed Plaintiffs no such affirmative duty.

Church Mutual contends that the customer service representative who assisted the Chabad in obtaining coverage was neither a broker nor an agent, because Church Mutual issued the Policy on a direct-writing basis and because the representative involved was merely part of the administrative personnel who gathered the information needed to generate a quote and then have the policy issued once the customer accepted the proposal. (Church Mutual Motion Mov. Br. at 18). The Court does not need to resolve that contention because even assuming the representative acted as a broker or agent, therefore owing Plaintiffs a fiduciary duty in the procurement of the Policy, that duty did not oblige Church Mutual to recommend or to obtain coverage Plaintiffs never requested and directed at a peril Plaintiffs never brought to Church Mutual's attention.

New Jersey law recognizes that, when an insurance broker undertakes to obtain coverage on behalf of a client, the broker owes that client a duty of care. *Holm v. Purdy*, 285 A.3d 857, 868-69 (N.J. 2022). A broker's duties include "(1) to procure the insurance; (2) to secure a policy that is neither void nor materially deficient; and (3) to provide the coverage he or she undertook to supply." *President*, 853 A.2d at 257. "The duty of a broker or agent, however, is not unlimited."

*Holm*, 285 A.3d at 869 (quoting *Carter Lincoln-Mercury, Inc. v. EMAR Grp., Inc.*, 638 A.2d 1288, 1292 (N.J. 1994)). A broker "is not responsible for failure to procure coverage when there is no evidence that the insured requested such coverage." *Id.* (quoting George J. Kenny & Frank A. Lattal, *New Jersey Insurance Law* § 10-12, at 321 (2022)). New Jersey law constrains an insurance broker's fiduciary duty to the types of coverage the broker has undertaken to obtain for the insured, as well as coverage required by a particular peril of which the broker is aware, and the New Jersey Supreme Court has not imposed a general duty on brokers to "advise an insured about the myriad varieties of insurance available on the market." *Id.* at 870; *see also President*, 853 A.2d at 258. The inquiry here is therefore whether Plaintiffs requested UM coverage for employees who were injured while not operating covered automobiles or, alternatively, whether they made known to Church Mutual the peril such coverage would have addressed.

Here, the record reflects that Plaintiff Rabbi Bekhor asked Church Mutual for liability and uninsured motorist coverage for Chabad, confirmed that he was covered "as a person" under the latter, and asked for uninsured motorist limits of $1,000,000. (D.E. No. 44-8, Deposition of Avraham Bekhor ("Bekhor Dep.") 31:3-7, 34:21-24). The record reflects that he received exactly that. The UM Endorsement extends "insured" status to "[a]nyone 'occupying' a covered 'auto,'" without regard to that person's relationship to the Named Insured, and Plaintiff Rabbi Bekhor was therefore personally covered whenever he was occupying a covered automobile. (D.E. No. 43-8 ¶ B.2.a).

Beyond the aforementioned exchange, there is no evidence of any discussion of, or request for, coverage that would reach Plaintiff Rabbi Bekhor when he was not occupying a covered automobile. Indeed, Plaintiff Rabbi Bekhor testified that he did not "remember the details" of any

discussion about the scope or nature of uninsured motorist coverage beyond the limits. (Bekhor Dep. 34:8-10).

Neither does the motion record reflect that Plaintiffs specifically notified Church Mutual about the specific peril in question (i.e., coverage for pedestrian employees). Based on the motion record, it appears that the information communicated between Plaintiffs and Church Mutual's representative concerned the vehicle to be insured, the identity of the persons who would be driving, and the coverages and limits requested. (Bekhor Dep. 29:13-25, 33:5-34:16-19). Plaintiffs have not identified anything in the record suggesting that they advised Church Mutual that religious observance regularly required Plaintiff Rabbi Bekhor or others associated with the Chabad to travel on foot along the shoulder of a state highway, or that they otherwise disclosed a distinctive risk of that kind. Because the coverage Church Mutual undertook to obtain was the coverage Plaintiff Rabbi Bekhor requested, and no "particular peril" known to the broker put Church Mutual on notice of the danger for which Plaintiffs now seek coverage, no duty arose for Church Mutual to recommend or to procure coverage that would have applied to Plaintiff Rabbi Bekhor's accident.

Nor does this record reflect the sort of special relationship that can give rise to a heightened advisory duty. *See Sobotor v. Prudential Prop. & Cas. Ins. Co.*, 491 A.2d 737, 739-40 (N.J. App. Div. 1984). Plaintiff Rabbi Bekhor had no assigned representative at Church Mutual, applied by telephone and could not, inf act, identify the person with whom he spoke. (Bekhor Dep. 28:3-29:20, 32:18-19, 34:3-35:24). Nothing suggests, moreover, that he entrusted the choice of coverage to the representative's judgment. He specified the coverages and the limit he wanted, and he received them.

Finally, the Court recognizes that whether a duty of care exists in a given relationship is a question of law for the Court rather than a question of fact for a jury, and turns largely on considerations of fairness and policy. *Wang v. Allstate Ins. Co.*, 592 A.2d 527, 534 (N.J. 1991) (citing *Strachan v. John F. Kennedy Mem'l Hosp.*, 538 A.2d 346, 349 (N.J. 1988)). If this Court were to recognize the affirmative duty Plaintiffs propose, it would carry consequences well beyond this case. It would subject any insurer to liability if it did not anticipate the unmentioned perils an applicant might one day encounter and volunteer recommendations sufficient to address them. Because Church Mutual owed Plaintiffs no such affirmative duty to recommend or to procure the coverage they now say they should have had, Church Mutual is entitled to summary judgment on Plaintiffs' Fourth Count.

**e. Loss of Consortium Claim**

In their Fifth Count, Plaintiffs assert a *per quod* claim on behalf of Plaintiff Mrs. Bekhor. (Compl. at 6–7). A per quod claim "is only maintainable by reason of a spouse's personal injury" and "depends upon and is incidental to the personal injury action." *Rex v. Hutner*, 140 A.2d 753, 754 (1958); *accord Lockhart v. Willingboro High Sch.*, No. 14-cv-3701, 2017 WL 4364180, at *8 (D.N.J. Sept. 29, 2017) ("A *per quod* claim is a derivative cause of action whose viability depends on the existence of tortious conduct against the injured spouse.") Because every substantive claim Plaintiffs assert against Church Mutual fails as a matter of law, this derivative claim fails with them, *Lockhart*, 2017 WL 4364180, at *8 ("Because Plaintiffs' underlying common law tort claims . . . have failed, [their] . . . *per quod* claims for damages must also fail."), and Church Mutual is entitled to summary judgment on the Fifth Count.

## IV. CONCLUSION

Based on the foregoing, the Court will **GRANT** Church Mutual's motion for summary judgment, (D.E. No. 44), and **DENY** Plaintiffs' cross-motion for summary judgment, (D.E. No. 43). An appropriate Order follows.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

**Date:** October 1, 2026